UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| TORI COLEMAN<br>On behalf of herself and all others<br>similarly situated,<br><br>        Plaintiff,<br>v.<br><br>BHAVESH D. PAVEL, et al.,<br><br>        Defendants. | CASE NO. 1:20-cv-00925-JG<br><br>JUDGE JAMES GWIN<br><br>**JOINT MOTION FOR**<br>**PRELIMINARY APPROVAL OF**<br>**CLASS AND COLLECTIVE**<br>**ACTION SETTLEMENT** |

Plaintiff Tori Coleman and Defendants Bhavesh D. Patel, Bhavani Donuts, Inc., Chardon Donuts, Inc., Euclid Donuts, Inc., Janki Donuts, Inc., Manki Donuts, Inc., Niyati Enterprise, LLC, Shiv Donuts, Inc., and Shri Boot Maa Corp., ("Weston Hurd Defendants") and Lakeshore Donuts, Inc., Vishnu Donuts Corp., Nilay Patel, Bhavesh D. Patel, and Shailesh Patel ("Roetzel & Andress Defendants") respectfully and jointly move the Court to (1) conditionally certify this case as a collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), (2) certify a proposed Settlement Class pursuant to Fed. R. Civ. P. 23, (3) preliminarily approve the proposed settlement of FLSA claims for the Potential Opt-Ins who join the case pursuant to § 216(b) and the proposed settlement of Settlement Class Members' state-law claims pursuant to Rule 23(e), (4) approve a proposed notice to Potential Opt-Ins and Settlement Class Members, and (5) schedule a Final Fairness Hearing at which final approval may be determined. A Proposed Preliminary Approval Order is attached as Exhibit 3.

The terms of the proposed Settlement are set forth in the parties' Agreement of Settlement and Release ("Settlement Agreement") attached as Exhibit 1. The Settlement will apply to Plaintiff Coleman, the Opt-ins who join the case pursuant to 29 U.S.C. § 216(b), and all members of the proposed Settlement Class. The Potential Opt-Ins and Settlement Class members are coextensive, consisting of:

> Current and former non-exempt hourly employees of "Dunkin" stores operated by Bhavani Donuts, Inc., Manki Donuts, Inc., Chardon Donuts, Inc., Bishop Donuts, Inc., Lakeshore Donuts, Inc., Vishnu Donuts Corp., Shri Boot Maa Corp., and/or Dhrumil Corp. for whom Defendants' time and pay records support claims for alleged underpayment of hourly wages or overtime compensation in one or more pay periods between April 30, 2017 and the date the Court gives final approval to the settlement.

*See* Settlement Agreement (Exhibit 1) at ¶¶ 10 and 11. These individuals are identified in the Roster of Potential Opt-Ins and Settlement Class Members jointly prepared by the parties and attached as Exhibit 2.

The Settlement will resolve bona fide disputes involving wages and overtime compensation under the FLSA, and corresponding provisions of Ohio wage-and-hour law. Plaintiff alleged that she and other similarly-situated employees were underpaid for hourly wages and/or overtime compensation. Defendants denied those claims.

The parties are represented by experienced counsel. Extensive investigation was conducted on both sides and settlement negotiations were rigorous. The parties believe the resulting agreement appropriately balances the expenses, risks, and possible outcomes of protracted litigation on the merits. For the Plaintiff and proposed Settlement Class Members, the Settlement will eliminate the risk and delay of litigation and make substantial payments available to all persons believed to be entitled to them.

The following settlement documents and proposed orders are submitted for approval or entry by the Court:

  Exhibit 1: Agreement of Settlement and Release ("Settlement Agreement")

  Exhibit 2: Roster of Potential Opt-Ins and Settlement Class Members

  Exhibit 3: Proposed Preliminary Approval Order (providing for notice and hearing)

  Exhibit 4: Proposed Notice to Potential Opt-Ins and Settlement Class Members

The sections below explain the litigation, the negotiations, the Settlement terms, the proposed settlement payments and distributions, and the propriety of approval.

## I. THE LITIGATION

### A. The Claims and Issues

Plaintiff Coleman filed a Class and Collective Action Complaint against Defendants (ECF #1) on April 30, 2020. Plaintiff alleged that she and other similarly-situated employees were underpaid for hourly wages and/or overtime compensation. Defendants denied those claims. Answers were filed by the Roetzel & Andress Defendants on June 29, 2020 (ECF #27) and by the Weston Hurd Defendants on July 8, 2020 (ECF #28).

### B. Initial Motion Practice and Additional Factual Specification

On June 25, 2020, the Weston Hurd Defendants moved to dismiss the Complaint on the ground that it failed to state a claim upon which relief can be granted. Certain Defendants' Motion to Dismiss (ECF #17). The principal contention of that motion was

that the businesses named in the Complaint were "separate and distinct entities" and Plaintiff "failed to provide sufficient factual support or notice as to how the Responding Defendants amount to 'joint employers' or an 'integrated enterprise.'" *Id*. at 2.

On July 16, 2020, Plaintiff filed an Amended Class and Collective Action Complaint (ECF #30) pursuant to Fed. R. Civ. P. 15(a)(1)(B). The Amended Complaint set forth additional factual averments including specific allegations which were said to support Defendants' alleged status as "joint employers" or an "integrated enterprise." *Id*. at ¶¶ 23 through 73.

The Roetzel & Andress Defendants answered the Amended Complaint on July 21, 2020 (ECF #31). The Weston Hurd Defendants requested a 30-day extension of time to answer the Amended Complaint (ECF #32) which was granted by the Court to August 31, 2020 (ECF #33).

### C. Joint Motion to Stay Pending Evidence Exchange and Mediation

On August 21, 2020, the parties filed a Joint Motion to Stay Litigation Pending Informal Exchange of Evidence and Mediation ("Joint Motion") (ECF 34). The Court granted the Joint Motion and stayed the case for sixty days (ECF #37). On motion by the parties, the Court later extended the stay for an addition sixty days. (ECF #39).

### D. Due Diligence Analysis of Time and Pay Records

Plaintiff had conducted extensive investigation before filing this case and the during the initial motion practice culminating in the Amended Complaint. Allegations based on those investigations—denied by Defendants—are set forth in the Amended Complaint at Paragraphs 23 through 73.

4

The parties' Joint Motion established protocols for a further investigation based on an extensive due-diligence production of information and documents. *See* Joint Motion (ECF #34) at ¶¶ 1 through 3. The Weston Hurd Defendants identified stores that met certain conditions as to ownership, operation, or receipt of revenue. For those stores, the Weston Hurd Defendants were to produce documents and data for hourly employees who worked more than forty hours in one or more workweeks showing the methods used to calculate overtime compensation during the relevant period, the time worked on a workweek basis during that period, and the compensation paid for those workweeks.

The Weston Hurd Defendants identified six stores as meeting the requisite conditions. The document production for those stores was made on October 9, 2020.

Analysis of the Weston Hurd Defendants' records required dozens of attorney hours. In theory, Defendants were to produce both timekeeping and payroll records, but, as many of Defendants' stores had not maintained complete records, the production was comprehensive for relatively few workweeks. For many workweeks, the production included pay registers but no corresponding timekeeping records. For a few, neither timekeeping records nor weekly or biweekly pay records were available. Whenever the records were incomplete, alleged damages could be estimated only by attributing, to those workweeks, the average time, pay, and damage information gleaned from other records.

The analysis was also painstaking because not all stores and workweeks presented the same pay practices. For example, several different methods of computing overtime

compensation were encountered. As a result, counsel's review and analysis was week-by-week, employee-by-employee.

E.    **Mediation and Negotiation**

On December 10, 2020, Plaintiff and the Weston Hurd Defendants proceeded to mediation before mediator Keith Ashmus via Zoom. Based on the document analyses discussed above, Plaintiff's counsel were able to provide detailed estimates, based on spreadsheets, for the alleged damages at the Weston Hurd Defendants' six stores. Defendants gave detailed responses to the allegations and data, and supplemental information was provided by Plaintiff.

The parties made progress during the formal mediation session on December 10, 2020, and continued to negotiate, as well as to exchange information and data, thereafter. The post-mediation discussions included detailed written proposals for the structure of a settlement. Ultimately a settlement was reached covering the Weston Hurd Defendants' stores.

Separate from the due-diligence exchange with the Weston Hurd Defendants, the Roetzel & Andress Defendants produced timekeeping and payroll records and negotiations took place with Plaintiff. Those negotiations resulted in an agreement that added the Roetzel & Andress Defendants' two stores to the overall settlement.

The proposed Settlement resulted from hard bargaining as to the settlement's amount and mutual consideration of its structure. The parties believe the Settlement appropriately balances the expenses, risks, and possible outcomes of protracted litigation. For the Plaintiff, Opt-Ins, and Settlement Class Members, the proposed Settlement will

eliminate the risk and delay of litigation and make substantial payments available to all persons believed to have been affected by the alleged pay practices.

## II. THE TERMS OF THE SETTLEMENT AND RELEASE OF CLAIMS

### A. The Scope of Settlement

The proposed settlement resolves the disputed claims in two ways. One, the settlement will resolve the FLSA claims of Plaintiff Coleman and similarly-situated employees who consent to become parties to the case and settlement pursuant to 29 U.S.C. § 216(b). Second, the settlement will resolve state-law wage-and-hour claims of all members of the proposed Settlement Class pursuant to Fed. R. Civ. P. 23(e).

### B. The Proposed Settlement Payments and Distributions

<u>Total Settlement Amount</u>. Defendants have agreed to pay the Total Settlement Amount of $126,000, as set forth in the Settlement Agreement (¶ 24).

<u>Collective and Class Payments</u>. The Total Settlement Amount, after deduction of a Service Award, Attorneys' Fees, and Reimbursed Litigation Expenses (the "Net Proceeds"), will be made available to the Plaintiff, Opt-Ins, and Settlement Class Members in individual settlement payments as follows.

<u>Method of Allocation</u>. The proposed method of allocating the Collective and Class Payments is reasonable and fair to all. The net proceeds will be allocated to the Plaintiff, Opt-Ins, and Settlement Class Members in proportion to their estimated unpaid wages between April 30, 2017 and April 30, 2020 based on Defendants' time and pay records. All Settlement Class Members and Opt-Ins will receive more than the amount of their alleged unpaid wages as estimated from Defendants' time and pay records. A proposed

Table of Individual Payments will be submitted to the Court after the period for requesting exclusion pursuant to Rule 23 has expired.

Service Award. The proposed Settlement provides for a service award of $3,000 to Plaintiff Tori Coleman in recognition of her assistance to Plaintiff's Counsel and her vital contribution to achieving the Settlement on behalf of all Opt-Ins and Class Members.

Attorneys' Fees and Cost Reimbursements. The proposed settlement includes a payment of $38,629 to Plaintiff's counsel for attorneys' fees and $2,371 in reimbursement of litigation costs. The proposed amount is substantially below counsel's lodestar to date.

### III. THE PROPRIETY OF APPROVAL

As to the Plaintiffs and Opt-Ins, the settlement must qualify for Court approval under the FLSA, 29 U.S.C. § 216(b). The Court must ensure "there is a bona fide dispute between the parties as to the employer's liability under the FLSA" and that the proposed settlement "is fair, reasonable, and adequate." *Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012). *Accord, In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381-82 (S.D. Ohio 2006); *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As to the proposed Settlement Class, Rule 23 requires a two-fold determination. Rule 23 authorizes the Court to certify the Settlement Class if it satisfies "the four prerequisites of Rule 23(a)"—numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the three requirements listed in Rule 23(b)."

8

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F. 3d 838, 850 (6th Cir. 2013). *See Gilbert v. Abercrombie & Fitch Co.*, 2016 U.S. Dist. LEXIS 103441 (S.D. Ohio Aug. 5, 2016) (Order by Smith, J.) (granting preliminary approval of a class settlement) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Stout v. J.D. Byrider*, 228 F.3d 709, 716 (6th Cir. 2000)); *Kis v. Covelli Enterprises, Inc.*, 2020 U.S. Dist. LEXIS 93929 (N.D. Ohio May 29, 2020) (Gwin, J.) (granting final approval). Rule 23(e) provides that the Court may approve the class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." *See, e.g., Gilbert*, 2016 U.S. Dist. LEXIS 103441, *22 (granting final approval of a class settlement upon the ground that it was "fair, reasonable and adequate as to each of the Parties"). *Accord, Kis,* 2020 U.S. Dist. LEXIS 93929, at *7.

The proposed Settlement satisfies all of these prerequisites and standards for purposes of this settlement, as shown below.

### A. The Proposed Settlement Class Should be Certified

Certification of the proposed Settlement Class will enable the parties to resolve the state-law claims of Plaintiff and all other class members. Rule 23 authorizes the Court to certify a class that satisfies "the four prerequisites of Rule 23(a)"—numerosity, commonality, typicality, and adequate representation—and "meet[s] at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F. 3d 838, 850 (6th Cir. 2013).

**Numerosity.** The proposed Settlement Class consists of one-hundred and seventy-five employees who worked for at the Dunkin' stores operated by Bhavani Donuts, Inc., Manki Donuts, Inc., Chardon Donuts, Inc., Bishop Donuts, Inc., Lakeshore

9

Donuts, Inc., Vishnu Donuts Corp., Shri Boot Maa Corp., and/or Dhrumil Corp. from April 30, 2017 through April 30, 2020.

**Commonality and typicality.** Plaintiff's complaint asserts claims under Ohio's wage-and-hour laws and Prompt Pay Act on behalf of all Settlement Class Members. By definition, all members of the Settlement Class, including Plaintiff, have these claims, and adjudicating them on a classwide basis would "generate common answers that are likely to drive resolution of the lawsuit." *Arlington Video Productions, Inc. v. Fifth Third Bancorp*, 2013 WL 560635, at *14 (6th Cir. Feb. 14, 2013).

**Adequacy of Representation.** Plaintiff Coleman has aggressively pursued the interests of Class members, and his counsel have extensive experience in class action litigation including wage-and-hour cases. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 543 (6th Cir. 2012) (class representatives "must have common interests with unnamed members" and "it must appear that [they] will vigorously prosecute the interests of the class through qualified counsel") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (citation omitted)).

**Predominance.** Whether Plaintiff and other employees were properly paid was the key issue in this litigation, and that claim was the primary issues driving the proposed Settlement. Common issues clearly predominate "over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

**Superiority.** The present case is precisely the type of case in which class litigation is the superior method of adjudication. Here, as *In re Whirlpool*, "class members are not likely to file individual actions" because "the cost of litigation would dwarf any potential

recovery." *In re Whirlpool*, 722 F.3d at 861 (citing *Amgen*, 133 S. Ct. at 1202; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997)).

      **B.**      <u>**The Proposed Notice Should Be Approved**</u>

The proposed Notice to Potential Opt-Ins and Settlement Class Members ("Notice") should be approved. The Notice describes the background of the case and summarizes the terms of the settlement, including the method of allocating individual payments in return for a release. The Notice informs recipients of the proposed Class and Collective Payments. The Notice further informs Settlement Class Members how to object to the Settlement or request exclusion from the Class if they so choose. If approved, the Notice will be sent to Potential Opt-Ins and Settlement Class Members by first class mail. *See* Fed. R. Civ. P. 23(c)(2) (requiring "the best notice that is practicable under the circumstances, including individual notice to all members … [by] United States mail, electronic means, or other appropriate means"); *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173-77 (1974) ("individual notice" must be given "to all members who can be identified through reasonable effort"); *Zimmer Paper Products, Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) ("first-class mail … fully satisfy the notice requirements of both [Rule] 23 and the due process clause").

      **C.**      <u>**The Settlement Is Fair, Reasonable, and Adequate**</u>

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court should "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna v. West Customer Mgmt. Group, LLC,* No.

4:09cv1608, 2010 WL 2490989, at *6 (N.D. Ohio June 15, 2010) (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 855 (1999))). *Accord*, *Kis*, 2020 U.S. Dist. LEXIS 93929, at *12.

In *Gascho v. Global Fitness Holdings, LLC*, 822 F. 3d 269 (6th Cir. 2016), the Sixth Circuit reaffirmed the seven-factor standard often used to evaluate whether a class settlement is "fair, reasonable, and adequate."

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Gascho*, 822 F. 3d at 276-77 (quoting *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). *See Kritzer v. Safelite Solutions, LLC*, 2012 U.S. Dist. LEXIS 74994, at *19-20 (S.D. Ohio May 30, 2012) (using a variation of the seven-factor standard to evaluate whether the proposed settlement was "fair, reasonable, and adequate" for purposes of the FLSA, 29 U.S.C. 216(b)). *See also Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (applying an alternative formulation of the seven-factors) (citing *UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992)); *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983)).

In the present case, the proposed Settlement will make individual settlement payments available to the Plaintiff, Opt-Ins, and Settlement Class Members according to a fair and reasonable method of allocation.

12

The first factor—the likelihood of success on the merits balanced against the amount and form of the settlement—strongly supports approval. Litigating FLSA claims is always risky and uncertain, and Plaintiff would have to establish not only Defendants' liability, which Defendants vehemently deny, but also the opt-ins' and class members' damages. The proposed Settlement will eliminate the risk and delay of litigation and make settlement payments available to all.

The other six factors are satisfied as well. Given the uncertainties surrounding this case, there is no guarantee that Plaintiff will prevail at trial. In contrast, the Settlement ensures that the Plaintiffs, Opt-Ins and Settlement Class Members will receive compensation. Thus, the settlement substantially benefits them, and is in the public interest. *See Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *24 (the public interest is served when a settlement "ends potentially long and protracted litigation").

**D.** **The Settlement Payments Are Fair, Reasonable, and Adequate**

As a part of the scrutiny it applies to an FLSA collective action settlement, the Court should "ensure that the distribution of settlement proceeds is equitable." *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna v. West Customer Mgmt. Group, LLC,* No. 4:09cv1608, 2010 WL 2490989, at *6 (N.D. Ohio June 15, 2010) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999))). *Accord*, *Kis,* 2020 U.S. Dist. LEXIS 93929, at *12. In the present case, the proposed Settlement will make individual settlement payments available to the Plaintiff, Opt-Ins, and Settlement Class Members according to a fair and reasonable method of allocation.

### E. The Proposed Service Award Is Proper and Reasonable

Reasonable service awards "are common in class action settlement[s] and [are] routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *26 (citing *Rotuna v. West Customer Mgmt. Group, LLC,* No. 4:09cv1608, 2010 WL 2490989, at *7). *Accord*, *In re Dun & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366, 373 (S.D. Ohio 1990). Service awards are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing the case and advising counsel in prosecution of the case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

In the present case, the proposed service award to Plaintiff Coleman is amply justified by her assistance to Plaintiff's Counsel and her vital contribution to achieving the Settlement on behalf of all Opt-Ins and Class Members.

### F. The Attorneys' Fees Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendants, and the costs of the action." 29 U.S.C. § 216(b). *See Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994); *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993). Ohio wage-and-hour statutes also provide for "costs and reasonable attorney's fees as may be allowed by the court." Ohio Rev. Code Ann. § 4111.10.

In the present case, the proposed payments of $38,629 for attorneys' fees and $2,371 in reimbursed litigation costs are reasonable. The proposed fees are 30.7% of the Total Settlement Amount, and substantially below counsel's lodestar to date. *See Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933, at *21 (N.D. Ohio Mar. 8, 2010) (study conducted by the National Economic Research Associates found that "regardless of size, attorneys' fees average approximately 32% of [class action] settlement[s]"); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000) (citing the NERA study as "[t]he most complete analysis of fee awards in class actions conducted to date"). *See Kis,* 2020 U.S. Dist. LEXIS 93929, at *11 (approving a one-third fee award).

### G.     The Proposed Release and § 216(b) Consent Are Proper

The proposed Settlement Agreement provides a distinct release applicable to Opt-Ins and Settlement Class Members, limited to "claims that are the subject of the Action." Settlement Agreement at ¶ 35. The laws specifically listed in the release are in a subordinate clause and relate to the wage-and-hour claims asserted in the case. *Id.* Thus, the released claims "share a 'factual predicate' with the claims pled in the complaint." *Does 1-2 v. Déjà Vu Consulting, Inc.*, 925 F. 3d 886, 900 (6th Cir. 2019) (released claims "share a 'factual predicate' with the claims pled in the complaint" if "the categories of relinquished claims [are] 'based upon' or 'reasonably related' to the pleadings") (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009)).

The proposed settlement includes a fair and efficient method of obtaining participants' consent pursuant to 29 U.S.C. § 216(b). Plaintiff Coleman has given § 216(b) consent via a consent form filed with the Court. The proposed Notice informs other,

15

similarly-situated employees that they will become parties to the case, and release FLSA claims against Defendants, by depositing, cashing or otherwise negotiating settlement checks (e.g., by accepting the money) on which § 216(b) consent is printed. Lists of such persons and copies of their negotiated checks will be filed with the Court. Settlement Agreement ¶¶ 14, 30.

This proposed procedure is proper and has been approved by the courts.

In *Lazarin v. Pro Unlimited, Inc.*, No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013), class members "opt[ed] in to the FLSA Class, and release[d] their claims under the FLSA, by cashing their settlement checks." *Id*. at *7. The court found that this was both fair and efficient, noting that "as described in the Notice," class members "were not required to submit a claim form in order to receive a settlement payment." *Id*.

> If Class Members do not cash their Settlement Award check, they will not be an FLSA Plaintiff and will not release any claims they may have under the FLSA. Unless Class Members exclude themselves from the Settlement, or opt out of the California Class, all of the other claims alleged in the case or that reasonably arise out of the facts alleged in the case will be released upon final approval of the Settlement by the Court.

*Lazarin*, 2013 WL 3541217, at *10.

The approach approved in *Lazarin* has been endorsed by other courts in multiple states and districts. *See, e.g.*, *Seghroughni v. Advantus Rest., Inc.*, No. 8:12-CV-2000-T-23TBM, 2015 WL 390329, at *2-3 n.* (M.D. Fla. Jan. 28, 2015) ("[b]y endorsing his or her settlement check, each FLSA Class Member shall release Defendants from all FLSA claims, as well as state wage and hour claims, that were brought in the Litigation"); *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 CIV. 2541 KNF, 2014 WL 1378922, at *2 (S.D.N.Y.

16

Mar. 25, 2014) (class members were informed that "[b]y cashing the settlement check, you agree to join the Collective Action"); *Lizondro-Garcia v. Kefi LLC*, No. 12 CIV. 1906 HBP, 2014 WL 4996248, at *2 (S.D.N.Y. Oct. 7, 2014) ("Defendants will not be released from the FLSA claims of FLSA collective members who do not endorse their settlement checks"). *Accord*, *Franco v. Ruiz Food Products, Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *24 (E.D. Cal. Nov. 27, 2012) (approving hybrid FLSA and state-law settlement in which settlement checks stated that "[b]y endorsing this check, I consent to join the Class in *Franco, et. al. v. Ruiz Food Products, Inc.*, elect to participate in the Settlement, and agree to release all of my claims that are covered by the Settlement").

*Lazarin* was specifically followed in the 2020 case of *Pham v. Quadgen Wireless Solutions, Inc.*, E.D. Pa. No. 17-cv-2894, 2020 U.S. Dist. LEXIS 37985, at *16-17 (Mar. 3, 2020). The court found that "[t]he release will be printed on the back of the settlement checks" and "[d]epositing the settlement checks will effectuate the release of the claims." 2020 U.S. Dist. LEXIS 37985, at *16-17 (citing *Lazarin*, 2013 U.S. Dist. LEXIS 97213 (and other cases cited above). *Pham* emphasized the fairness of the settlement's release provisions. As in the present case, the release of claims by class members was "limited to wage and hour claims only—not a broad release of all imaginable claims." *Id*.

Here, the release applicable to Opt-Ins and Settlement Class Members is similarly limited to "claims that are the subject of the Action," as discussed above. Settlement Agreement at ¶ 35. The proposed Notice informs class members of the legal effect of the settlement (i.e., binding them unless they request exclusion from the settlement class pursuant to Rule 23) and the effect of endorsing their settlement check (i.e., opting into

17

the collective action pursuant to 29 U.S.C. § 216(b) and releasing their FLSA claims against Defendants).

IV. **CONCLUSION**

For the reasons addressed above, the parties respectfully request that the Court enter the Proposed Preliminary Approval Order, attached as Exhibit 3.

Respectfully submitted,

*/s/ Scott D. Perlmuter*
SCOTT D. PERLMUTER (0082856)
**TITTLE & PERLMUTER**
4106 Bridge Avenue
Cleveland, OH 44113
Phone:216-285-9991
Fax: 888-604-9299
Email: scott@tittlelawfirm.com

*s/ Thomas A. Downie*
Thomas A. Downie (0033119)
46 Chagrin Falls Plaza #104
Chagrin Falls, Ohio 44022
440-973-9000
tom@chagrinlaw.com

*Attorneys for Plaintiff*


*/s/ Matthew Miller*
Matthew Miller (0084977)
Weston Hurd LLP
1301 East Ninth Street, Suite 1900
Cleveland, Ohio 44114
Telephone: 216-241-6602
Facsimile: 216-621-8369
E-mail: mmiller@westonhurd.com

*Counsel for Defendants Bhavani Donuts, Inc., Chardon Donuts, Inc., Euclid Donuts, Inc., Janki Donuts, Inc., Manki Donuts,*

*Niyati Enterprise, LLC, Bhavesh Patel, Ghanshyam Patel, Jayesh Patel, Shailesh Patel, Shiv Donuts, Inc., and Shri Boot Maa Corporation*

*/s/ Barry Freeman*
Barry Y. Freeman (0062040)
Roetzel & Andress, LPA
1375 East Ninth Street, 10th Floor
Cleveland, Ohio 44114
Telephone: 216-615-4850
Facsimile: 216-623-0134
E-mail: bfreeman@ralaw.com

*Counsel for Defendants Lakeshore Donuts, Inc., Vishnu Donuts Corp., Nilay Patel, Bhavesh Patel (solely as it relates to his involvement with Lakeshore Donuts) and Shailesh Patel (solely as it relates to his involvement with Vishnu Donuts)*

PROOF OF SERVICE

I certify that on this April 1, 2021 the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

 *s/ Scott D. Perlmuter*
Scott D. Perlmuter (0082856)